IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM FRANCHI, On Behalf of Himself and All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>8POINT3 ENERGY PARTNERS LP, CHARLES D. BOYNTON, MARK R. WIDMAR, NATALIE F. JACKSON, ALEX BRADLEY, THOMAS C. O'CONNOR, NORMAN J. SZYDLOWSKI, AND MICHAEL W. YACKIRA,<br><br>　　　　　Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 5, 2018 (the "Proposed Transaction"), pursuant to which 8point3 Energy Partners LP ("8point3" or the "Partnership") will be acquired by affiliates of Capital Dynamics, Inc.

2. On February 5, 2018, the Board of Directors (the "Board" or "Individual Defendants") of 8point3 General Partner, LLC ("General Partner"), which manages the Partnership, caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with 8point3 Operating Company, LLC, General Partner, 8point3 Holding Company, LLC, 8point3 Solar CEI, LLC, 8point3 Co-Invest Feeder 1, LLC, 8point3 Co-Invest Feeder 2,

LLC, CD Clean Energy and Infrastructure V JV (Holdco), LLC, 8point3 Partnership Merger Sub, LLC, 8point3 Opco Merger Sub 1, LLC, and 8point3 Opco Merger Sub 2, LLC.  Pursuant to the terms of the Merger Agreement, the Partnership's Class A shareholders will receive $12.35 per share in cash.

3. On March 19, 2018, defendants filed a preliminary proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, a

shareholder of 8point3.

9. Defendant 8point3 is a Delaware limited partnership and maintains its principal executive offices at 77 Rio Robles, San Jose, California 95134. 8point3's shares are traded on the NasdaqGS under the ticker symbol "CAFD." General Partner manages the Partnership through its directors and executive officers.

10. Defendant Charles D. Boynton ("Boynton") is the Chairman of the Board and Chief Executive Office ("CEO") of General Partner.

11. Defendant Mark R. Widmar ("Widmar") is a director of General Partner.

12. Defendant Natalie F. Jackson ("Jackson") is a director of General Partner.

13. Defendant Alex Bradley ("Bradley") is a director of General Partner.

14. Defendant Thomas C. O'Connor ("O'Connor") is a director of General Partner.

15. Defendant Norman J. Szydlowski ("Szydlowski") is a director of General Partner.

16. Defendant Michael W. Yackira ("Yackira") is a director of General Partner.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action on behalf of himself and the other public shareholders of the Partnership (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19. This action is properly maintainable as a class action.

20. The Class is so numerous that joinder of all members is impracticable. As of February 6, 2018, the Partnership had approximately 28,088,673 Class A shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Partnership and the Proposed Transaction*

25. 8point3 is a limited partnership that was formed by First Solar, Inc. and SunPower Corporation to own, operate, and acquire solar energy generation projects.

26. The Partnership owns interests in projects in the United States that generate long-term contracted cash flows and serve utility, commercial, and residential customers.

27. On February 5, 2018, the Individual Defendants caused the Partnership to enter into the Merger Agreement.

28. Pursuant to the terms of the Merger Agreement, the Partnership's Class A shareholders will receive $12.35 per share in cash.

29. According to the February 5, 2018 press release announcing the Proposed Transaction:

> 8point3 Energy Partners LP (NASDAQ:CAFD) ("8point3" or the "Partnership") today announced it has entered into an Agreement and Plan of Merger and Purchase Agreement (the "Merger Agreement") with CD Clean Energy and Infrastructure V JV, LLC, an investment fund managed by Capital Dynamics, Inc., and certain other co-investors (collectively, "Capital Dynamics"), pursuant to which Capital Dynamics will acquire 8point3 through an acquisition of 8point3 General Partner, LLC (the "General Partner"), the general partner of the Partnership (such transaction, the "GP Transfer"), all of the outstanding Class A shares in the Partnership and all of the outstanding common and subordinated units and incentive distribution rights in 8point3 Operating Company, LLC ("OpCo"), the Partnership's operating company (the "Proposed Transactions").
>
> Pursuant to the Proposed Transactions, the Partnership's Class A shareholders and First Solar, Inc. (NASDAQ: FSLR) ("First Solar") and SunPower Corporation (NASDAQ: SPWR) ("SunPower" and, together with First Solar, the "Sponsors"), as holders of common and subordinated units in OpCo, will receive $12.35 per share or per unit in cash, plus a preset daily amount representing cash expected to be generated from December 1, 2017 through closing less any distributions received after the execution of the Merger Agreement and prior to closing. No consideration will be received by the Sponsors for the incentive distribution rights and the GP Transfer. . . .
>
> The completion of the Proposed Transactions is subject to a number of closing conditions, including approval by a majority of the outstanding 8point3 public Class A shareholders, the expiration of the waiting period under the Hart-Scott-Rodino (HSR) Antitrust Improvements Act of 1976, Federal Energy Regulatory Commission (FERC) Section 203 approval and the approval of the Committee on Foreign Investment in the United States (CFIUS). The Sponsors, which are the indirect owners of our General Partner and approximately 64.5 percent of OpCo's outstanding units, have executed an agreement to vote in support of the Proposed Transactions. Additionally, the Proposed Transactions are subject to certain other customary closing conditions.

*The Proxy Statement Omits Material Information*

30. On March 19, 2018, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

31. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

32. First, the Proxy Statement omits material information regarding the Partnership's financial projections and the valuation analyses performed by the Partnership's financial advisor in connection with the Proposed Transaction, Evercore Group L.L.C. ("Evercore").

33. With respect to the Partnership's financial projections, the Proxy Statement fails to disclose: (i) revenues from unconsolidated affiliates; (ii) principal repayments related to refinancing activities; (iii) all line items used to calculate unlevered free cash flow; (iv) all line items used to calculate Adjusted EBITDA; and (v) a reconciliation of all non-GAAP to GAAP metrics.

34. With respect to Evercore's *Levered Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the "Merchant Price Curve Sensitivity" projections; (ii) the "Generation Sensitivity" projections; (iii) the Partnership's net operating losses; and (iv) the inputs and assumptions underlying the range of discount rates of 6.0% to 8.0%.

35. With respect to Evercore's *Unlevered Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Merchant Price Curve Sensitivity projections; (ii) the Generation Sensitivity projections; (iii) the Partnership's net operating losses; and (iv) the inputs and assumptions underlying the range of discount rates of 5.0% to 7.0%.

36. With respect to Evercore's *Peer Group Trading Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for the companies observed by

Evercore in the analysis; and (ii) the estimated 2018-2022 implied dividends per share for the Partnership.

37. With respect to Evercore's *Precedent M&A Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Evercore in the analysis.

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. Second, the Proxy Statement omits material information regarding potential conflicts of interest of Evercore.

40. Specifically, the Proxy Statement fails to disclose the amount of compensation Evercore received for the past services it provided to the Partnership and its affiliates. Instead, the Proxy Statement only provides that, "[f]or each of the engagements described in this paragraph Evercore received fees and reimbursement of certain out-of-pocket expenses."

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. Third, the Proxy Statement fails to disclose whether any non-disclosure agreements executed by the Partnership and the prospective bidders contained "don't ask, don't waive"

provisions that are or were preventing those counterparties from requesting a waiver of standstill provisions to submit superior offers to acquire the Partnership.

43. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Mergers; (ii) Recommendation of the GP Conflicts Committee and the General Partner Board; Reasons for Recommending Approval of the Merger Proposals; (iii) Opinion of the GP Conflicts Committee's Financial Advisor; and (iv) Certain Financial Projections.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Partnership's shareholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and the Partnership

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. The Partnership is liable as the issuer of these statements.

47. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

48. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable shareholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to shareholders.

50. The Proxy Statement is an essential link in causing plaintiff and the Partnership's shareholders to approve the Proposed Transaction.

51. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of the Partnership within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

57. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not

contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 3, 2018

**RIGRODSKY & LONG, P.A.**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com